Our third case this morning is No. 23-1016, N. Ray Universal Electronics, Inc. Okay. Mr. Lucas? Thank you, Your Honors. May it please the Court, Universal Electronics Incorporated requests the reversal of the Board's decision finding Claims 1 through 11 of the 795 application and ballot as obvious over Kim and LeMay. I'm going to talk about two issues. I'd like to focus primarily on the claim construction issue of the Board because it's, in my mind, that doesn't really pass the straight-face test. It definitely doesn't. Well, that depends how you read it. I think it's a pretty good argument that the Board's construction is not different from yours. I disagree with that. I mean, if you have... No, you do. Let's look at... I mean, the Board's construction, I'm primarily focused on Appendix 5 and Appendix 6. It's about a paragraph to two paragraphs, a page, and we're dealing with the, I'll call it the Anywhere Limitation, where it specifically says, responding to a first predetermined user input provided to any area of the touch-sensitive display. That is the Anywhere Limitation that we're going to be discussing. That's where we believe the construction is clearly erroneous. What happens with the Board here is it looks like the Board is definitely trying to preserve the examiner's rejection and brings up written description issues, says that the actual plain language of that claim limitation is not supported, and then comes out with a construction of some sort of touch on some area of the display. And our position is that is just not the plain and ordinary meaning. Let's assume for a moment that the Board's construction is the same as your construction. So why doesn't LeMay disclose this? Because it discloses a left-right swipe, and you have to start on the left side, for example, or a right-left swipe. Okay, so... I mean, I don't understand. I'm having trouble understanding. I'll assume, that's a tough assumption because I don't believe... Wait, wait, wait. Okay, go ahead. Sorry. I'm having trouble looking at LeMay. It seems to me that it doesn't say that the swipe has to start in a particular place. It shows arrows running in both ways, up and down or left and right. And so why doesn't LeMay satisfy this? Okay, so... It's a left-right swipe gesture. It can be started any place on the screen that's consistent with the gesture. I mean, you can't start at the extreme right, I guess. But that's just because of the nature of the gesture, and not because you can't use a particular part of the screen. Right, so the Board relies on the examiner's citation of 204 and 250, paragraphs 204 and 250, and that's at Appendix 647 and then Appendix 650. I'm going to... I don't agree with the assumption because I don't believe somewhere means anywhere. I think those are completely different terms, okay? Anywhere means anywhere. You can touch anywhere on the touch-sensitive display of the actual device, of the touch-sensitive display. And in those two paragraphs, 204 and 250, you have touches. You have touches that are on specific areas of a widget, and then you have swipes that are across the display of the widget. But I think that's the big distinction, and that's why the Board changed, you know, didn't apply the plated area. I'm sorry, I'm not understanding what you're saying. I'm looking at 622, and it shows a swipe could be left or right. Why isn't the swipe a gesture as discussed in the specification of the patent? Okay, so 622... Left-right swipe is a gesture which can start any place on the screen, I mean consistent with the kind of gesture it is. Right, so this is limited, and if you look at... I'm at 622 also, so I'm looking at the picture. It's figure F5M. This is limited to the widget display, not the full touch-sensitive display of the smart device. You can see that. That also, if you look at 646, we'll start there. It specifically says for display, a web clip widget. It's always talking about just the widget, not the full display, which is actually in the claim language, in the anywhere claim limitation language. So if you look at 204, it's talking about just displaying it in the widget, the displayed widget, the displayed widget. Remember, the widget's just popping up. It's just a small little widget in the full display of the smart device. So you agree that it shows anywhere on the widget? The widget, correct, yes. If you look at 250 at page appendix 650, also limited to the widget. And so that's why the board did this. The board saw that LeMay was limited to just this little displayed widget and all the touches and stuff like that, and then changed the construction from anywhere to somewhere. And we think that construction is erroneous, because it's contrary to the plain and ordinary meaning. It's contrary to the claims. It's contrary to the specification. Did you argue to the board that LeMay only disclosed any place on the widget as opposed to any place on the whole screen? We did argue that.  Can you show me where you are? Sure. I'm going to go to probably the appealed brief. It's the best place. Well, to be clear, if you remember, this construction, some area, was created by the board. So we didn't have the distinction of anywhere versus somewhere. It was created by the board. We did argue that LeMay, though, didn't have it anywhere. Let me find you that exactly, because we applied the plain and ordinary language. I know we did, because it would have had to have been argued, because the board says we argued it. But I'm trying to find exactly where it is. Where does the board say you are? Well, it says, if you look at Appendix 3 and Appendix 4, it says the two issues. Does the combination of Kim and LeMay's teachers suggest responding to it? I'm looking for where you argued that LeMay shows anywhere on the widget screen but not anywhere on the whole screen, which I understand to be your sole argument at this point. So if you look at Appendix 521, that's where we discussed LeMay, but I don't. Well, you can try to find it. I know it was argued that LeMay doesn't disclose the claim limitation because it doesn't disclose the anywhere on the touch-sensitive display, and I'll find that. But going back to that, that's the issue with LeMay, and that's why the board, you can see, created this very erroneous construction by getting into written description and then saying that some sort of touch on some area of the display is what the anywhere limitation means, and that's just contrary to the plain ordinary meaning. I'm going to go back because it's very clear. There's no discussion of predetermined user input, and then there's no discussion of any area of the touch-sensitive display. They just change any to some to read in the LeMay discussion of the widget. And so we would say just based on that, the court should reverse the board's decision because the claims construction is wrong, and then if you actually apply the correct construction, LeMay doesn't disclose the proper construction of the anywhere limitation. I mean, as I said before, the board never discussed any area, no discussion of predetermined at Appendix 5 and 6. The director, under the proper construction, where you actually apply the plain ordinary meaning, the director doesn't dispute that LeMay doesn't disclose that at 23 and 24. And as we discussed, you have LeMay limiting its disclosure to the widget screen, not the full touch-sensitive display on the smartphone, not anywhere on the full touch display on the smartphone. I do want to briefly discuss the motivation to combine holding only because it's just one of those situations where the examiner and then the board just kept trying to find something that would work. And initially the examiner said, look, it would reduce the cognitive burden to combine LeMay with Kim and to use what LeMay does on Kim. When pressed during prosecution, it said, oh, it's because Kim, to support its motivation, to come up with something to support its motivation, it says Kim had really small buttons. And if you look at 594, that substantial evidence just cannot support that. It definitely shows that the board improperly just created some type of problem so that their motivation would work. If you look at 594, you can see the actual, there's this figure 5A of Kim, the buttons are bigger than the fingertips. So that's not, the motivation to combine also fails there. So we'd ask that the court reverse or at the very least vacate with the proper, to provide the proper construction. If there's no further questions. Okay, thank you. Ms. Lateef. Good morning, Your Honors. May it please the court. I'd just like to start where Your Honor, Judge Dyke asked the question about whether or not there was any discussion about LeMay. If you look at the rubric that was submitted before this court, there is no argument about whether or not LeMay teaches under the board's construction. So in fact, we point out that that has been forfeited. If you accept the board's construction, there's no question that it's taught in the references. The question then remains whether there is a motivation to combine. So the two issues before this court are the claim construction and whether or not there's a motivation. There's not a question whether or not the part teaches the limitations under the board's construction. Okay, but putting aside the question of waiver or forfeiture, what's the answer to the contention that LeMay discloses only a portion of the screen referred to as a widget portion as opposed to the whole screen? So under the board's construction, it teaches every piece of, under the construction of the response limitation, LeMay fits that bill. When you swipe or tap or gesture onto an area of the disclosure. They seem to agree that that's the case, but their whole argument now is, oh, well, LeMay is only referring to doing that on a portion of the screen, which I guess they call the widget portion of the screen as opposed to the whole screen. Because they disagree with the claim construction. Which is sort of new to me. I don't remember seeing that argument before. Because it didn't exist. You didn't see it because it's not there. It's not in the record. It's not in the blue brief. Their issue now is that the board got the construction wrong, which we disagree with. And if the board got the construction wrong, they then argue, well, LeMay wouldn't fit under that construction. Our position is. On that second proposition, do you disagree? I disagree, but I will. Well, I kind of have an understanding that that's what we've been discussing. That if their construction is right, then LeMay doesn't teach it. And that's why it's really important to figure out if the construction is right or not. As opposed to thinking, not clear why the construction dispute matters. Sure. I just want to be clear, Your Honor. I disagree with that proposition, but I'm not a fact finder. The board didn't make that decision because it wasn't. They just did their construction and said, under this construction, LeMay fits. If for some reason this court disagrees with the board and needed to adopt another claim construction, the fact finding board would be. It would be up to the board to decide whether or not LeMay teaches that limitation. So as I stand here today, I can tell you what I believe. But again, I'm just defending the board's decision. I'm not a fact finder, so I can't stand in the place of the board. Do you think there's a distinction between their construction and the board's construction? I think their construction is a little bit narrower, but again. In what respect? Well, if you look at the intrinsic evidence, there's nothing that's. Well, there's two points. Let me back up a little bit. So they make a big to-do about the predetermined part of the limitation, which wasn't really at issue to be construed because that was never in dispute. So they want some specific type of input. And the board said that's not what the specification requires. It can pretty much be some sort of gesture. It can be a tap. It can be a swipe. It could be a vertical or a horizontal swipe. So on that aspect of it, it's narrower because they want something specific. I don't know what that something is, but their argument is it has to be a pre-mapped, specific, predetermined gesture. The other piece about the any area comes in because they argue that it can be anywhere, though the specification doesn't really support that. Whereas the board says, no, it just has to be somewhere on the display screen. What's the difference? Well, because if you have, I mean, anywhere maybe could mean top part of the display screen. And maybe when you swipe, you only touch a piece of it. It is sort of a little bit of semantics here. You know, I tend to have fat fingers. So if I'm swiping, maybe I don't get the specific corner in the way that under the construction of anywhere would come in. But it's somewhere. It's on the display screen. That's sort of the difference. It's very minor. I don't see the difference, but go ahead. Well, the board felt that there was nothing in the specification that was explicit to describe the anywhere. So they looked at the part in the specification. They say anywhere means somewhere. So somewhere is anywhere. I don't know. What's the difference? Never mind. So it's, yeah. I mean, I guess I would say it's not nowhere. Let me see if I can find words to help what I understand the dispute to be. Under the board's view, you know, processing device that accepts the particular kinds of gestures. Even even if this processing device accepted it only in the southeast quadrant, that would read on this. This would read on that. Their view is the device has to accept the gestures throughout the display. I think that's OK. That's the distinction. And I mean, one trouble is that I would have thought it to be almost self-evident by now to drafters that the word any imports precisely that ambiguity. Sometimes it means at a given place. Sometimes it means at all. Right. That's true. But because there was no explicit definition in the claim for anywhere, the board decided, well, we need to look and see what the specification says. Well, what does that mean? And because there was nothing in there, they looked at this one section on APX 47 and said, well, it can mean some gesture somewhere. Not specific to. Well, not to make this too complicated, but the prosecution history of this patent shows rejecting a predetermined place on the screen. Right. I agree, Your Honor, but that wasn't even in construction. So this whole conversation about the board's construction, the predetermined part wasn't in dispute. The board was specifically focused on this part about the any area. If you look at the way this. I'm not talking about predetermined gesture. I'm talking about predetermined area. Oh, the predetermined area. And that was explicitly rejected in the prosecution, not a predetermined area. Right. And I don't think the board is asking for a predetermined area as much as some place on the screen. I mean, there's no predetermined area. I mean, even under the board's construction, there's no requirement that the area has to be a specific place. It's just some place on the screen. And if you can do that, then under the prior art falls into that construction. And there's no question because it was never disputed by Universal Electronics. And just remind me, what is the intrinsic evidence for the board's saying that accepting, recognizing the touch from a particular place, not necessarily predefined, falls within this claim? The board ended up pointing to APPX 47. And I guess that's the area that's talking about the description of figure five in the specification. And there's a part that says sort of down at the bottom of that paragraph around line 15, 16, around line 19. And it says once configured, the widget GUI 502 may be invoked at any point without switching to the main remote control application by activating an icon provided for that purpose, by a gesture, by motion of the smart device. The board cited to that as their reason to interpret the gesture to be on a touch sensitive display as some sort of touch on some area of the display. You can see their explanation on APPX 6. Is that reading the three word phrase at any point to be about place as opposed to time? Is the reading on 47, is that your question? Yes, line 20 of the page we're just looking at. Once figured, widget GUI 502 may be invoked at any point without switching. Does that mean at any time or at any spot? I think the board looked at that as any spot, which is why they point to this area of the specification to find. So if you look at 47, that's what they're referencing on page six of their, I'm sorry, APPX 6 of their opinion in that first full paragraph. So just moving on to the motivation to combine, if that's okay. The other issue in this case is whether or not there's a motivation to combine Kim and LeMay and Universal Electronics says that, well, this combination shouldn't be because it doesn't reduce cognitive burden. And the board actually points to LeMay to talk about how when you have these portable devices, oftentimes the more icons you put on them, the harder they are to read. And so it would make sense that you can do something as easily as a swipe gesture. But in addition, if this court disagrees with that motivation, the board also made the point that, and if this is on APPX 546, using a swipe gesture, which was within the level of ORA scale at the time of the claim to pension, was made to substitute. A tap gesture is a simple substitution that does not include knowledge gleaned only from the applicant's disclosure. So the board sort of made two findings here. One is reduce cognitive burden, but also it's a simple substitution, a predictable result if you disagree with the cognitive burden piece. That's another reason why there would be a motivation to combine here. And if there are no further questions, I'll yield my time and respectfully ask that this court affirm the board's decision. Okay, thank you, Ms. Lateef. Thank you. Mr. Lucas? Thank you, Adam. Just a couple of points. On the anywhere, because I think that's kind of where we're at, I'm at Appendix 46. This is the original specification, and I think this is probably the best way to kind of lead into the proper construction. In some embodiments, this input may be recognized only if performed within Area 304, while in other embodiments— Mr. Lucas, are you reading from the very top of the page, line two? Yes, I am. Sorry, I apologize. Thank you, Your Honor. While in other embodiments, it may be recognized when performed anywhere on the touch-sensitive surface of the smart device. So I think, Judge Toronto, I think our position is it's anywhere, all possible places. And that's different than just somewhere on the screen. That's not—somewhere is much broader and incorrect because it covers—it could just be a specific spot. What's novel and non-obvious about this claimed invention was you could have your touchscreen display, and you had pre-programmed swipes or double-taps, stuff like that, that you could touch anywhere on the screen, and you could pull up a widget. That's what was so novel about this. And that's the distinction. It wasn't just in a specific space. And we believe that that construction is limited to a specific space, just somewhere, not the entirety of the screen. And that's why we think the construction is wrong. Are we still in BRI world here? BRI world? What do you mean by that? Broadest Reasonable Interpretation. Correct, yes. Thank you. Yes. Yes. Plain Order of Meaning, Broadest Reasonable Interpretation. And you can see from the board's construction that that's very far away. Getting into a written description analysis, that's also improper at Appendix 6. I went back and I looked. We didn't specifically argue that issue because I think it didn't come up until the board's decision. Did you argue it in the Blue Brief? I believe we did, yes. We pointed out the anywhere part. I don't know if we specifically called out widget versus, but we said it. Yes, I didn't think of it. Okay. And I will say that the director has not argued any type of waiver. The issue, I think, really comes down to on the claim construction. On that latter point, they are arguing for a waiver. Right, but on the issue of the incorrect construction, this court reviews that de novo. And under that construction, the determination of the board, our position is cannot stand. On the motivation, I just want to touch on a couple of points. The director referenced LeMay. That's not the primary reference being modified. The issue that the court should look at and the board should look at is, well, what supports that there's a motivation to modify Kim and you look at the buttons and it's just not there. Those buttons are not too small. That doesn't support the problem. It doesn't create, the problem they create doesn't support the motivation combined. Okay, thank you. Thank you, Your Honor. Thank you, both counsel. Case is submitted.